**ORIGINAL**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

PRECISION ENGINEERING LTD., )
                                         )
        Plaintiff,                       )   C. A. No. _____ 0 6 ‑ 1 1 0
                                         )
v.                                       )
                                         )
LORD CORPORATION and                     )
LORD FAR EAST, INC.,                     )
                                         )
        Defendants.                      )   JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff Precision Engineering Ltd. ("Precision"), by and through its undersigned

counsel, brings this action against defendants Lord Corporation ("Lord") and Lord's wholly-

owned subsidiary, Lord Far East, Inc. ("LFE"), based upon Lord's breach of an exclusive

distributorship agreement between Lord and Precision, and intentional interference and other

tortious conduct committed by Lord and LFE, including interference with Precision's long-

standing customer relationships and obtaining under false pretenses critical customer lists and

related customer information, and, in support thereof, avers as follows:

## INTRODUCTION

1.     This action arises from Lord's willful and deliberate breach of a long-standing

distributorship agreement with Precision in which Lord agreed that Precision would be the

exclusive distributor in Thailand for, among other products, two of Lord's core products. The

breach by Lord is in contravention of the parties' express oral agreement, Lord's written

declarations upon which Precision justifiably relied, and the parties' nearly thirty-year course of

conduct and dealing. In the alternative, Precision is entitled to relief designed to prevent Lord

from being unjustly enriched at Precision's expense. Further, Lord and LFE have unlawfully

interfered with the business relationships that Precision has developed with several of its long-standing customers by withholding products from Precision, its exclusive distributor in Thailand, and injecting another distributor into Precision's exclusive territory. Lord and LFE also have committed tortious acts by obtaining under false pretenses critical customer lists and related customer information, which was then used by Lord and LFE to interfere with Precision's customer relationships and further undermine and destroy the exclusive distributorship agreement between Lord and Precision. As a result of the wrongful conduct by Lord and LFE, Precision has suffered, and continues to suffer, loss of sales, profits, business opportunities and business good will, as well as the destruction of the majority of Precision's business, and the significant diminution of the value of the company.

## **THE PARTIES**

2.      Plaintiff Precision Engineering Ltd. is a privately-held company organized and existing under the laws of Thailand, with its principal place of business at 153/13 Roungmuang Soi 3, Roungmuang Road, Patumwan, Bangkok, 10330, Thailand.

3.      Defendant Lord Corporation is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with corporate headquarters at 111 Lord Drive, Cary, North Carolina, 27511-7923.

4.      Defendant Lord designs, manufactures and distributes, among other things, general purpose and specialty adhesives and coatings to distributors worldwide, generating annual sales of more than $500 million. Lord is a global seller and distributor of products to all fifty states, including Delaware, and maintains plants in nine states and distributorship operations in the United States and twelve foreign countries.

2

RLF1-2982850-1

5. Defendant Lord Far East, Inc., a wholly-owned subsidiary of Lord Corporation, is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business, upon information and belief, at 7F Nitto-Hoshino Bldg., 11-1, Nishi-Shinjuku 8-Chome, Shinjuku-ku, Tokyo, Japan.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(2) because there is diversity of citizenship and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because all or one of the defendants are subject to personal jurisdiction and/or reside in this judicial District.

## FACTUAL BACKGROUND

### A. Business Background of Parties

8. One of Lord's coating products, Chemglaze® Performance Coatings ("Chemglaze"), is a polyurethane coating product that is applied to floors and panels. Lord's core adhesive product, Chemlok® Rubber-to-Metal Adhesives ("Chemlok"), is an industrial adhesive used to bond elastomers to metal and is considered an industry leader in rubber-to-metal adhesives.

9. Upon information and belief, at all times relevant to this action, Lord's manufacturing facilities for Chemlok and Chemglaze were located in Erie, Pennsylvania.

10. Upon information and belief, LFE, a wholly-owned subsidiary, regularly conducts business with and through its parent company, Lord, in Delaware, Pennsylvania, North Carolina, and elsewhere throughout the United States.

11. Precision is a small, family-owned company located in Bangkok, Thailand. Precision is an importer and distributor of polyurethane coatings and industrial adhesives to

3

customers in Thailand, and a manufacturer of wood-coating products for sale to customers in Thailand.

## B. Precision's Exclusive Distributorship Agreement with Lord

12.    Shortly after its inception in the early 1970's, Precision entered into an agreement with Lord whereby Precision would be Lord's exclusive distributor of, among other products, Chemlok and Chemglaze products in Thailand. In return, among other things, Precision (a) agreed not to, and did not, sell or distribute in Thailand the products of any of Lord's competitors; (b) agreed to, and did, develop a large and profitable marketplace in Thailand for the distribution of Lord's Chemlok and Chemglaze products; (c) agreed to, and did, market, promote and sell those products to customers in Thailand; and (d) agreed to, and did, service those customers for Lord in Thailand.

13.    At all times relevant to this action, Precision complied with its obligations under the exclusive distributorship agreement between it and Lord.

14.    Relying on the exclusive distributorship agreement, Precision launched, among other products, Lord's Chemlok and Chemglaze products into the Thailand market. Through its pioneering efforts promoting Lord's products, Precision developed a significant, loyal customer base and established a secure, profitable market for Lord in Thailand.

15.    Throughout the course of their almost thirty-year agreement, Lord repeatedly proclaimed in writing to Precision and any would-be competitors that Precision is Lord's exclusive distributor of, among other products, Chemlok and Chemglaze products in Thailand.

16.    For example, on June 18, 1981, Lord's manager of export sales, Charles H. Peterson, confirmed in a letter to Vijit Subcharoen, then-president of Precision, that Precision "is

4

RLF1-2982850-1

the sole agent for Hughson products in Thailand." (*See* Exhibit "A" attached hereto). Upon information and belief, as of 1981, Lord was known as Hughson Chemicals, Lord Corporation.

17.    Approximately ten years later, in 1991, Lord again confirmed in writing that Precision was Lord's exclusive distributor of, among other products, Chemlok and Chemglaze products in Thailand, when Anthony V. Rende, Jr., Lord's manager of export sales, proclaimed "to all interested parties in Thailand" that Precision "is the exclusive representative of Lord Corporation for the country of Thailand." (*See* Exhibit "B" attached hereto).

18.    At all times relevant to this action leading up to Lord's breach of the exclusive distributorship agreement between it and Precision, the parties' course of conduct was consistent with an exclusive distributorship agreement between Lord and Precision.

19.    At no time leading up to Lord's breach of the exclusive distributorship agreement between it and Precision did Lord ever repudiate or purport to terminate the exclusive distributorship agreement between Lord and Precision.

## C.    **Lord's Breach of the Exclusive Distributorship Agreement**

20.    By 2004, the sale of Chemlok and Chemglaze accounted for 66% of Precision's total business. The market for Chemlok adhesives, however, was expected to increase significantly in 2004 and beyond based in large part on Thailand's rapidly expanding automobile industry.

21.    In or around March of 2004, Precision learned that Tokai Eastern Rubber Ltd. ("TER"), its largest customer and a customer of nearly ten years at that time, had been approached by Tokyo Zairyo Thailand, Ltd. ("TZT") with an offer to sell TER Chemlok at prices lower than those offered by Precision. Precision subsequently learned that two of its other customers, Thai Fukoku and Thai NOK, had also been approached by TZT regarding the

5

purchase of Chemlok. Further, at least one other Precision customer, Thai Kokoku, was contacted by TZT and has been purchasing Lord products from TZT.

22.     Confused as to how TZT obtained Lord's Chemlok products for sale in Precision's exclusive Thailand market, Precision inquired of Lord's representatives. Hirokazu Omoto, the general manager of LFE, informed representatives of Precision that TZT had been nominated by LFE, with the knowledge and approval of Lord, as a second distributor of Chemlok products in Thailand.

23.     Lord's appointment of TZT as a second distributor of Chemlok in Thailand is in direct contravention of Lord's exclusive distributorship agreement with Precision.

24.     Thai Fukoku and Thai NOK have abandoned their customer relationships with Precision and are purchasing Lord products exclusively from TZT. TER has significantly reduced its purchases from Precision, buying instead a large percentage of its Lord product needs from TZT.

## D.     Interference by Lord and LFE with Precision's Long-Standing Business Relations

25.     On October 9, 2003, months before Precision learned that Lord introduced TZT into the Thailand market in breach of the exclusive distributorship agreement, Precision submitted to Mr. Omoto and Lord, at Mr. Omoto's direction, a detailed marketing report that set forth the price and volume of Lord's products sold by Precision in Thailand, as well as the names of Precision's largest customers. Mr. Omoto assured Precision that Lord would use Precision's marketing information solely to assist Precision in developing a successful strategy for servicing and maintaining global customers and benefiting the Thailand market over which Precision had contractual exclusivity through its agreement with Lord.

6

26.     Upon information and belief, Lord and LFE never intended to use the information provided by Precision for the purposes represented. Instead, Lord and LFE used the information provided by Precision to encourage and enable TZT to enter into the Thailand market as a second, competitive distributor for Chemlok, in direct contravention Lord's exclusive distributorship agreement with Precision, and in a tortious and fraudulent manner.

27.     Upon information and belief, at the direction of Lord, Mr. Omoto traveled to Thailand in January of 2004 to visit all major customers that Precision disclosed in its October 9, 2003 marketing report in order to dissuade them from purchasing additional Chemlok products from Precision. Mr. Omoto persuaded three of Precision's major customers, TER, Thai NOK and Thai Fukoku, to purchase Chemlok products from TZT.

28.     In an effort to retain its largest customer and a customer of almost ten years, and to mitigate the damage inflicted upon it by Lord and LFE as a result of their misconduct, Precision offered TER a price for Lord's Chemlok product that was lower than the price offered by TZT.

29.     Upon information and belief, in approximately September of 2004, TER informed Mr. Omoto and Lord that Precision had offered it a price for Chemlok that was more competitive than the price offered by TZT. Further, TER informed Mr. Omoto and Lord that TER desired to purchase all of its Chemlok product from Precision. Mr. Omoto and Lord attempted to persuade TER not to return to purchasing its Chemlok product from Precision.

30.     Shortly thereafter, on October 15, 2004, Lord placed all of Precision's outstanding purchase orders for Chemlok products on hold, thereby (a) preventing Precision from fulfilling the orders placed by its customers, including TER; (b) damaging Precision's reputation and goodwill in the Thailand market; and (c) causing business interruption and lost profits.

RLF1-2982850-1

31. In October 2004, upon information and belief, Mr. Omoto again visited TER to dissuade it from purchasing Lord products from Precision.

32. At the insistence of TER, Lord suggested on October 25, 2004 that it intended to treat Precision and TZT as dual distributors of Chemlok products to TER for a period of three months.

33. In addition to the above misconduct relating to the Chemlok products, beginning on or around March 21, 2005, Lord stopped providing Precision with Chemglaze products that conformed with the very same specifications required by Precision and its customers for nearly thirty years.

34. Lord advised Precision that it purportedly was no longer capable of providing conforming Chemglaze products.

## E.  Lord's Post-Breach Efforts to Obtain from Precision a Substitute Written Distributorship Agreement

35. After Precision confronted Lord with (a) Lord's breach of the exclusive distributorship agreement, and (b) the tortious interference by Lord and LFE with Precision's business relationships, Lord embarked on an effort to pressure Precision into agreeing to a substitute distributorship agreement with much less favorable terms than the one that Lord breached, including but not limited to the elimination of Precision's exclusivity and the ability of Lord to terminate Precision as a distributor after one year.

36. Further, in an effort to persuade Precision to enter into the less favorable substitute distributorship agreement, Lord suggested to Precision that it may be willing to explore with Precision a license agreement in which Precision would obtain the rights to manufacture and sell Lord's Chemglaze products in the Thailand market.

8

37.    Because the conduct of Lord and LFE was destroying Precision's Chemlok business, Lord attempted to entice Precision into the substitute distributorship agreement with the prospect of a Chemglaze license, which would purportedly help Precision salvage some part of its business. At the same time, the refusal by Lord to provide conforming Chemglaze products to Precision significantly damaged Precision's ability to meet customer demands in the Thailand market and caused substantial lost revenue.

38.    Leading up to the filing of this action, Precision repeatedly sought to persuade Lord to honor its contractual obligations under the parties' exclusive distributorship agreement. Lord repeatedly failed and refused to do so.

39.    Further, leading up to the filing of this action, Precision repeatedly sought to dissuade Lord and LFE from their persistent and intentional interference with Precision's business relationships with its long-standing customers. Lord and LFE repeatedly failed and refused to do so.

## F.    The Actions of Lord and LFE Have Damaged Precision

40.    As a result of Lord's wrongful conduct in breaching its exclusive distributorship agreement with Precision, and in the intentional interference by Lord and LFE with Precision's business relationships with TER and others, Precision has suffered, and will continue to suffer, substantial monetary damages.

41.    In addition to lost sales and profits, Precision has suffered, and will continue to suffer, damage to its reputation and goodwill in the marketplace, and the diminution of the overall value of the Precision business.

9

RLF1-2982850-1

42.     Further, the harm to Precision's customer relationships has impacted, and will continue to impact, Precision's ability to sell existing products to these customers, and to introduce new products to customers in the Thailand market.

43.     The harm Precision has suffered and continues to suffer is exacerbated because Chemlok and Chemglaze are trademarked Lord products for which no substitutes are available.

## COUNT I
### (Breach of Express Oral Contract)
### [Precision Engineering Ltd. v. Lord Corporation]

44.     Precision hereby repeats and incorporates herein by reference each and every allegation contained in paragraphs 1 through 43 of this Complaint.

45.     As set forth more fully above, Precision and Lord entered into an oral agreement in which the parties expressly agreed that Precision would serve as Lord's exclusive distributor of, among other products, Chemlok and Chemglaze products in Thailand.

46.     As set forth more fully above, Lord breached its agreement with Precision by, among other things, (a) introducing into the Thailand market a second distributor of, among other products, Chemlok and Chemglaze products; (b) restricting Precision's ability to promote, market and sell Chemlok and Chemglaze products in the Thailand market; and (c) refusing and failing to provide Precision with conforming Chemglaze products for sale to Precision's Thailand customers.

47.     As set forth more fully above, Precision has suffered, and will continue to suffer, damages as a direct and proximate result of Lord's breach of the exclusive distributorship agreement.

WHEREFORE, Precision demands an order and judgment in its favor against Lord for damages in an amount to be proven at trial, but in any event in excess of $75,000 exclusive of

10

interest and costs, plus costs of suit, pre- and post-judgment interest and such other and further relief as the Court determines to be appropriate.

### COUNT II
### (Breach of Implied-in-Fact Contract)
### [Precision Engineering Ltd. v. Lord Corporation]

48.    Precision hereby repeats and incorporates herein by reference each and every allegation contained in paragraphs 1 through 47 of this Complaint.

49.    As set forth more fully above, Lord and Precision formed an implied-in-fact contract pursuant to which Precision served as Lord's exclusive distributor of, among other products, Chemlok and Chemglaze products in Thailand, as evidenced by various written documents and the parties' nearly thirty-year course of conduct and dealings.

50.    As set forth more fully above, Precision assented to the formation of the implied-in-fact exclusive distributorship agreement by, among other things, (a) agreeing not to sell or distribute in Thailand the products of any of Lord's competitors, and not selling or distributing same; (b) agreeing to develop a large and profitable marketplace in Thailand for the distribution of, among other products, Lord's Chemlok and Chemglaze products, and developing same; and (c) agreeing to market, promote and sell those products to customers in Thailand, and marketing, promoting and selling same.  In fact, Precision established, fostered and maintained the Thailand market for, among other products, Chemlok and Chemglaze products from 1975 until the filing of this action.

51.    As set forth more fully above, Lord repeatedly proclaimed in writing to Precision and its would-be competitors that Precision was its sole distributor of, among other products, Chemlok and Chemglaze products in Thailand. (*See* Exhibits "A" and "B" attached hereto).

11

52.     As set forth more fully above, Lord breached its agreement with Precision by, among other things, (a) introducing into the Thailand market a second distributor of Chemlok and Chemglaze products; (b) restricting Precision's ability to promote, market and sell, among other products, Chemlok and Chemglaze products in the Thailand market; and (c) refusing and failing to provide Precision with conforming Chemglaze products for sale to Precision's Thailand customers.

53.     As set forth more fully above, Precision has suffered, and will continue to suffer, damages as a direct and proximate result of Lord's breach of the exclusive distributorship agreement.

WHEREFORE, Precision demands an order and judgment in its favor against Lord for damages in an amount to be proven at trial, but in any event in excess of $75,000 exclusive of interest and costs, plus costs of suit, pre- and post-judgment interest and such other and further relief as the Court determines to be appropriate.

### COUNT III
### (Breach of Quasi Contract)
### [Precision Engineering Ltd. v. Lord Corporation]

54.     Precision hereby repeats and incorporates herein by reference each and every allegation contained in paragraphs 1 through 53 of this Complaint.

55.     As set forth more fully above, Precision has conferred valuable benefits upon Lord by, among other things, (a) agreeing not to sell or distribute in Thailand the products of any of Lord's competitors, and not selling or distributing same; (b) agreeing to develop a large and profitable marketplace in Thailand for the distribution of, among other products, Lord's Chemlok and Chemglaze products, and developing same; (c) agreeing to market, promote and sell those products to customers in Thailand, and marketing, promoting and selling same; and (d) agreeing

12

RLF1-2982850-1

to service those customers for Lord in Thailand, and servicing same. In fact, Precision established, fostered and maintained the Thailand market for, among other products, Chemlok and Chemglaze products from 1975 until the filing of this action.

56.    As set forth more fully above, Lord, in turn, has realized and continues to realize and retain a significant benefit from Precision's thirty-year efforts to market, promote and sell, among other products, Chemlok and Chemglaze products in the Thailand market that Precision established.

57.    Lord would be unjustly enriched if it is permitted to retain the benefits of Precision's pioneering efforts, hard work and diligence without adequately compensating Precision for the full value of the services rendered.

58.    As set forth more fully above, Precision has suffered, and will continue to suffer damages as direct and proximate result of Lord's misconduct in retaining the valuable benefits conferred by Precision without adequately compensating Precision for the same.

WHEREFORE, Precision demands an order and judgment in its favor against Lord for damages in an amount to be proven at trial, but in any event in excess of $75,000 exclusive of interest and costs, plus costs of suit, pre- and post-judgment interest and such other and further relief as the Court determines to be appropriate.

## COUNT IV
### (Promissory Estoppel)
### [Precision Engineering Ltd. v. Lord Corporation]

59.    Precision hereby repeats and incorporates herein by reference each and every allegation contained in paragraphs 1 through 58 of this Complaint.

60.    As set forth more fully above, Lord promised Precision that Precision would be its exclusive distributor of, among other products, Chemlok and Chemglaze products in Thailand.

13

61.     Lord reasonably should have anticipated that its promise to Precision would induce Precision to act.

62.     As set forth more fully above, Precision, in turn, relied upon Lord's promise and diligently took, among other things, the following actions: (a) agreeing not to sell or distribute in Thailand the products of any of Lord's competitors, and not selling or distributing same; (b) agreeing to develop a large and profitable marketplace in Thailand for the distribution of, among other products, Lord's Chemlok and Chemglaze products, and developing same; (c) agreeing to market, promote and sell those products to customers in Thailand, and marketing, promoting and selling same; and (d) agreeing to service those customers for Lord in Thailand, and servicing same. In fact, Precision established, fostered and maintained the Thailand market for, among other products, Chemlok and Chemglaze products from 1975 until the filing of this action.

63.     Precision's reliance on Lord's promise that it would be the exclusive distributor of, among other products, Chemlok and Chemglaze products in Thailand, was reasonable.

64.     In this action, injustice can be avoided only by enforcing Lord's promise because Precision has lost, and will continue to lose, a substantial portion of its business, as set forth more fully herein.

WHEREFORE, Precision demands an order and judgment in its favor against Lord for damages in an amount to be proven at trial, but in any event in excess of $75,000 exclusive of interest and costs, plus costs of suit, pre- and post-judgment interest and such other and further relief as the Court determines to be appropriate.

14

## COUNT V
### (Tortious Interference with Business Relations)
**[Precision Engineering Ltd. v. Lord Corporation and Lord Far East, Inc.]**

65.     Precision hereby repeats and incorporates herein by reference each and every allegation contained in paragraphs 1 through 64 of this Complaint.

66.     As set forth more fully above, Precision had been the exclusive supplier of Chemlok product to TER for more than ten years, since 1995.

67.     Similarly, Precision had been the exclusive supplier of Chemlok to Thai Fukoku since 1983, to Thai NOK since 1988 and to Thai Kokoku since 1998.

68.     Lord and LFE knew that Precision enjoyed a long and profitable business relationship with TER, Thai Fukoku, Thai NOK and Thai Kokoku.

69.     Despite this knowledge, Lord and LFE intentionally and maliciously interfered with those business relationships by inducing TER, Thai Fukoku, Thai NOK and Thai Kokoku to purchase Chemlok products from TZT, not Precision.

70.     The interference by Lord and LFE with Precision's long-standing relationships with TER, Thai Fukoku, Thai NOK and Thai Kokoku, as set forth more fully above, was neither privileged nor justified.

71.     To the contrary, the actions by Lord and LFE, including but not limited to obtaining under false pretenses Precision's marketing information solely to enable and encourage TZT to enter the Thailand market and compete against Precision in contravention of the exclusive distributorship agreement between Precision and Lord, were wholly improper, unjustified and intentionally designed to destroy Precision's business relationships with, among others, TER, Thai Fukoku, Thai NOK and Thai Kokoku.

15

72.     As a direct and proximate result of the above misconduct by Lord and LFE,

Precision has suffered, and continues to suffer, monetary damages, as set forth more fully herein.

73.     The misconduct by Lord and LFE is of such an egregious nature and character

that it justifies the imposition of punitive damages against Lord and LFE.

WHEREFORE, Precision demands an order and judgment in its favor against Lord for

damages in an amount to be proven at trial, but in any event in excess of $75,000 exclusive of

interest and costs, plus costs of suit, pre- and post-judgment interest, punitive damages and such

other and further relief as the Court determines to be appropriate.

## COUNT VI
### (Fraudulent Misrepresentation)
### [Precision Engineering Ltd. v. Lord Corporation and Lord Far East, Inc.]

74.     Precision hereby repeats and incorporates herein by reference each and every

allegation contained in paragraphs 1 through 73 of this Complaint.

75.     As set forth more fully above, Lord and LFE, through Mr. Omoto, requested that

Precision provide Lord with a detailed marketing report setting forth the price and volume of

Lord's products sold by Precision in Thailand, as well as the names of Precision's largest

customers, so that Lord could use the information to assist Precision in developing a successful

strategy for servicing and maintaining global customers.

76.     In reliance upon the representations made by Mr. Omoto, Precision submitted the

report to Mr. Omoto on October 9, 2003.

77.     As set forth more fully above, Lord and LFE never intended to use the

information provided by Precision for the purposes represented, but rather intended to and did

use the information to encourage and enable TZT to enter into the Thailand market as a second,

competitive distributor for, among other products, Chemlok.

16

78.    As set forth more fully above, Lord misrepresented to Precision that it would be willing to enter into a license agreement in which Precision would obtain the rights to manufacture and sell Lord's Chemglaze products in the Thailand market solely in an attempt to persuade Precision to enter into a less favorable substitute distributorship agreement.

79.    The misrepresentations of Lord and LFE regarding the use of Precision's marketing information was material to Precision's decision to provide detailed marketing information to Lord.

80.    Lord's and LFE's representations regarding Precision's marketing information and Lord's willingness to enter into a license agreement with Precision for Chemglaze were made falsely and with the intent of misleading Precision into relying on the misrepresentations.

81.    Precision, in turn, justifiably relied on Lord's and LFE's misrepresentations.

82.    As a direct and proximate result of the above misconduct by Lord and LFE, Precision has suffered, and continues to suffer, monetary damages, as set forth more fully herein.

83.    The misconduct by Lord and LFE is of such an egregious nature and character that it justifies the imposition of punitive damages against Lord and LFE.

WHEREFORE, Precision demands an order and judgment in its favor against Lord for damages in an amount to be proven at trial, but in any event in excess of $75,000 exclusive of interest and costs, plus costs of suit, pre- and post-judgment interest, punitive damages and such other and further relief as the Court determines to be appropriate.

### COUNT VII
### (Negligent Misrepresentation)
### [Precision Engineering Ltd. v. Lord Corporation and Lord Far East, Inc.]

84.    Precision hereby repeats and incorporates herein by reference each and every allegation contained in paragraphs 1 through 83 of this Complaint.

17

85.    As set forth more fully above, Lord and LFE, through Mr. Omoto, requested that Precision provide Lord with a detailed marketing report setting forth the price and volume of Lord's products sold by Precision in Thailand, as well as the names of Precision's largest customers, so that Lord could use the information to assist Precision in developing a successful strategy for servicing and maintaining global customers.

86.    In reliance upon the representations made by Mr. Omoto, Precision submitted the report to Mr. Omoto on October 9, 2003.

87.    As set forth more fully above, Lord and LFE never intended to use the information provided by Precision for the purposes represented, but rather intended to and did use the information to encourage and enable TZT to enter into the Thailand market as a second, competitive distributor for, among other products, Chemlok.

88.    As set forth more fully above, Lord misrepresented to Precision that it would be willing to enter into a license agreement in which Precision would obtain the rights to manufacture and sell Lord's Chemglaze products in the Thailand market solely in an attempt to persuade Precision to enter into a less favorable substitute distributorship agreement.

89.    Lord and LFE knew or should have known that the representations concerning the purported use of Precision's detailed marketing information, as well as Lord's willingness to enter into a license agreement with Precision for Chemglaze, were false and/or misleading.

90.    Lord and LFE misrepresented the purported use of Precision's detailed marketing information with intent to induce Precision to act on the misrepresentation and provide the marketing information to Lord and LFE.

18

RLF1-2982850-1

91. Lord and LFE negligently misled Precision by failing to reveal to Precision that the marketing information provided by Precision would be used by Lord and LFE to introduce a competitor into the Thai market.

92. Lord and LFE knew or should have known that Precision would rely upon their representations, with regard to their decision to provide detailed marketing information to Lord and LFE.

93. Precision, in turn, justifiably relied on Lord's and LFE's misrepresentations.

94. As a direct and proximate result of the above misconduct by Lord and LFE, Precision has suffered, and continues to suffer, monetary damages, as set forth more fully herein.

95. The misconduct by Lord and LFE is of such an egregious nature and character that it justifies the imposition of punitive damages against Lord and LFE.

WHEREFORE, Precision demands an order and judgment in its favor against Lord for damages in an amount to be proven at trial, but in any event in excess of $75,000 exclusive of interest and costs, plus costs of suit, pre- and post-judgment interest, punitive damages and such other and further relief as the Court determines to be appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff Precision Engineering Ltd. hereby demands a jury trial on all claims and causes

of action for which a jury trial is available.

*[signature]*

Samuel A. Nolen (#971)
nolen@rlf.com
Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Alyssa M. Schwartz (#4351)
schwartz@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7752
Facsimile: (302) 498-7752

*Attorneys for Plaintiff Precision Engineering Ltd.*

Of Counsel:

Troy S. Brown
Karen M. Klotz
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone: (215) 963-5000
Facsimile: (215) 963.5001

Dated: February 21, 2006

RLF1-2982850-1



**Hughson Chemicals**
Lord Corporation
2000 West Grandview Blvd
P. O. Box 1099
Erie, Pa. 16512
Telephone: 814-868-3611
Telex: 91-4445

Mr. Vijit Subcharoen
PRECISION ENGINEERING LTD.
153/13 Soi Rongmuang 3
Bangkok, Thailand

June 18, 1981

Dear Vijit:

For purposes of receiving inquiries from the
Government of Thailand, we are pleased to
confirm that Precision Engineering Ltd.,
Bangkok 5, Thailand, is the sole agent for
Hughson products in Thailand.

Best regards,

Charles H. Peterson
Manager, Export Sales

/agh

PRESIDENT'S E AWARD     FOR EXPORT EXCELLENCE

# LORD®

Lord Corporation
International Group
2000 West Grandview Blvd
P. O. Box 10038
Erie, PA 16514-0038 U.S.A.
814:868-0924
Telex: 291935
FAX: 814:864-3452

TO WHOM IT MAY CONCERN:

This will serve as notice to all interested parties in Thailand in connection with the following:

1)    Precision Engineering Ltd. of 153/3-13 Soi Rongmuang 3, Bangkok 10330, Thailand, is the exclusive representative of Lord Corporation for the country of Thailand.

2)    Precision Engineering Ltd. is authorized to promote the sale of products manufactured by Lord Corporation and receive orders.

3)    This authorization has been given only to Precision Engineering Ltd.

LORD CORPORATION

Anthony V. Rende, Jr.
Manager, Export Sales

JS 44

**CIVIL COVER SHEET**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I.(a) PLAINTIFF**
PRECISION ENGINEERING, LTD.

**DEFENDANT**
LORD CORPORATION and LORD FAR EAST, INC.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF ___Foreign___
(EXCEPT IN U S PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
( IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES. USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME. ADDRESS. AND TELEPHONE NUMBER)
Samuel A. Nolen, Esquire
Frederick L. Cottrell, III, Esquire
Alyssa M. Schwartz, Esquire
Richards, Layton & Finger
One Rodney Square, P.O. Box 551
Wilmington, DE 19899
(302) 651-7700

ATTORNEYS (IF KNOWN)

**II. BASIS OF JURISDICTION** (PLACE AN X IN ONE BOX ONLY)

☐ 1 U S Government Plaintiff
☐ 2 U S Government Defendant
☐ 3 Federal Question (U S Government Not a Party)
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN 'X' IN ONE BOX)
(For Diversity Cases Only)     FOR PLAINTIFF AND ONE BOX FOR DEFENDANT

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☒4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☒5 |
| Citizen or Subject of a Foreign Country | ☒3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**VI. CAUSE OF ACTION** (CITE THE U S CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)
DIVERSITY SUIT UNDER 28 U.S.C. § 1332(a)(2) FOR BREACH OF CONTRACT, TORTUOUS INTERFERENCE WITH BUSINESS RELATIONS, FRAUDULENT MISREPRESENTATION and NEGLIGENT MISREPRESENTATION

**V. NATURE OF SUIT** (PLACE AN X IN ONE BOX ONLY)

CONTRACT: ☐110 Insurance ☐120 Marine ☐130 Miller Act ☐140 Negotiable Instrument ☐150 Recovery of Overpayment & Enforcement of Judgment ☐151 Medicare Act ☐152 Recovery of Defaulted Student Loans (excl. Veterans) ☐153 Recovery of Overpayment of Veteran's Benefits ☐160 Stockholder's Suits ☒190 Other Contract ☐195 Contract Product Liability

REAL PROPERTY: ☐210 Land Condemnation ☐220 Foreclosure ☐230 Rent Lease & Eject ☐240 Torts to Land ☐245 Tort Product Liability ☐290 All Other Real Property

TORTS — PERSONAL INJURY: ☐310 Airplane ☐315 Airplane Product Liability ☐320 Assault, Libel & Slander ☐330 Federal Employers Liability ☐340 Marine ☐345 Marine Product Liability ☐350 Motor Vehicle ☐355 Motor Vehicle Product Liability ☐360 Other Personal Injury

PERSONAL INJURY: ☐362 Personal Injury - Med Malpractice ☐365 Personal Injury - Product Liability ☐368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY: ☐370 Other Fraud ☐371 Truth In Lending ☐380 Other Personal Property Damage ☐385 Property Damage Product Liability

CIVIL RIGHTS: ☐441 Voting ☐442 Employment ☐443 Housing/Accommodations ☐444 Welfare ☐440 Other Civil Rights

PRISONER PETITIONS: ☐510 Motions to Vacate Sentence Habeas Corpus: ☐530 General ☐535 Death Penalty ☐540 Mandamus & Other ☐550 Civil Rights ☐555 Prison Condition

FORFEITURE/PENALTY: ☐610 Agriculture ☐620 Other Food & Drug ☐625 Drug Related Seizure of Property 21 USC 881 ☐630 Liquor Laws ☐640 R R & Truck ☐650 Airline Regs ☐660 Occupational Safety/Health ☐690 Other

LABOR: ☐710 Fair Labor Standards Act ☐720 Labor/Mgmt. Relations ☐730 Labor/Mgmt. Reporting & Disclosure Act ☐740 Railway Labor Act ☐790 Other Labor Litigation ☐791 Empl Ret Inc Security Act

BANKRUPTCY: ☐422 Appeal 28 USC 158 ☐423 Withdrawal 28 USC 157

PROPERTY RIGHTS: ☐820 Copyrights ☐830 Patent ☐840 Trademark

SOCIAL SECURITY: ☐861 HIA (1395ff) ☐862 Black Lung (923) ☐863 DIWC/DIWW (405(g)) ☐864 SSID Title XVI ☐865 RSI (405(g))

FEDERAL TAX SUITS: ☐870 Taxes (U.S. Plaintiff or Defendant) ☐871 IRS - Third Party 26 USC 7609

OTHER STATUTES: ☐400 State Reapportionment ☐410 Antitrust ☐430 Banks and Banking ☐450 Commerce/ICC Rates/etc ☐460 Deportation ☐470 Racketeer Influenced and Corrupt Organizations ☐810 Selective Service ☐850 Securities/Commodities/Exchange ☐875 Customer Challenge 12 USC 3410 ☐891 Agricultural Acts ☐892 Economic Stabilization Act ☐893 Environmental Matters ☐894 Energy Allocation Act ☐895 Freedom of Information Act ☐900 Appeal of Fee Determination Under Equal Access to Justice ☐950 Constitutionality of State Statutes ☐890 Other Statutory Actions

**VI. ORIGIN** (PLACE AN X IN ONE BOX ONLY)
☒1 Original Proceeding ☐2 Removed from State Court ☐3 Remanded from Appellate Court ☐4 Reinstated or Reopened ☐5 Transferred from another district (specify) ☐6 Multidistrict Litigation ☐7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:** CHECK IF THIS IS A CLASS ACTION DEMAND ☐ Under F.R.C.P. 23
CHECK YES only if demanded in complaint: JURY DEMAND: ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY** (see instructions): JUDGE_____ NUMBER_____

DATE  February 21, 2006   SIGNATURE OF ATTORNEY OF RECORD _____

FOR OFFICE USE ONLY

RECEIPT #_____ AMOUNT _____ APPLYING IFP___ JUDGE _____ MAG JUDGE _____

RLF1-2981991-1

INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.   (a) Plaintiffs - Defendants.   Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title

(b) County of Residence   For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved)

(c) Attorneys   Enter firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)"

II.  Jurisdiction.   The basis of jurisdiction is set forth under Rule 8 (a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction is based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here

United States defendant (2) When the plaintiff is suing the United States, its officers or agencies, place an X in this box

Federal question  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked

Diversity of citizenship   (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked (See Section III below; federal question actions take precedence over diversity cases.)

III. Residence (citizenship) of Principal Parties.   This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party

IV. Origin.   Place an "X" in one of the seven boxes

Original Proceedings. (1) Cases which originate in the United States district courts

Removed from State Court  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court  (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date

Reinstated or Reopened  (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District  (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers

Multidistrict Litigation  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above

Appeal to District Judge from Magistrate Judgment  (7) Check this box for an appeal from a magistrate's decision

V.  Nature of Suit.   Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV above, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive

VI. Cause of Action.   Report the civil statute directly related to the cause of action and give a brief description of the cause

VII. Requested in Complaint.   Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.C.P

Demand   In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction

Jury Demand   Check the appropriate box to indicate whether or not a jury is being demanded

VIII. Related Cases.   This section of the JS-44 is used to reference relating pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases

Date and Attorney Signature.   Date and sign the civil cover sheet